[Sac. No. 1848.   Department One.—January 6, 1911.]

## MANUEL W. PERRY et al., Appellants, v. CHARLES H. CALKINS et al., Respondents.

WATER-RIGHTS—RIPARIAN OWNERS—DIVERSION BY LOWER OWNER— ADVERSE USE.—The use of water diverted from a natural stream at a point below the land of a riparian owner is not ordinarily adverse to him. No right against him is obtained by such use, although under an adverse claim of paramount right, unless his own use has been interfered with by the adverse use below, a thing which can seldom occur.

ID.—PRESCRIPTIVE RIGHT ACQUIRED BY LOWER OWNER.—No right to water can be acquired by prescription, where the lower riparian proprietor has taken the water out of the stream at a point on his own land and has used such water only as the upper riparian proprietor permitted to pass down through his land to the lower owner; such use by the latter is not adverse in the sense required to give a right by prescription.

ID.—NON-USER BY UPPER OWNER—APPROPRIATION FOR NON-RIPARIAN LAND.—The non-user of water by the upper riparian owner of land cannot be invoked to strengthen the claim of the appropriation by prescription by the lower riparian owner under like circumstances. The same rule applies where the lower appropriator or user is not a riparian owner and takes the water for use on lands not riparian.

ID.—EVIDENCE AGAINST TITLE BY PRESCRIPTION.—In the present case it is held, that there was no evidence that the use of the waters of the stream in controversy by the plaintiffs had actually interfered with or prevented its use on the lands of certain defendants, who were upper riparian owners, for a sufficient length of time to give plaintiffs title by prescription against such defendants as riparian owners, and that the finding of a prescriptive right to the number of inches of water assigned to such defendants' land by the judgment is supported by the evidence.

ID.—CHANGE OF PLACE OF DIVERSION.—An established right to divert the waters of a stream is not affected by a mere change of the place of diversion if it caused no injury.

ID.—INJUNCTION AGAINST EXCESSIVE DIVERSION—MATERIAL DIMINU-TION OF STREAM.—A lower riparian owner, having a right to the

flow of forty-five inches of water, taken from the surface stream, or as much thereof as would reach his ditch, subject to the prior right of a municipality to first divert fifty inches, may restrain the municipality from diverting a larger amount, if such additional diversion would materially diminish the quantity of water flowing down the stream and into his ditch.

ID.—DIVERSION FROM UNDERFLOW.—LOWERING SURFACE OF STREAM.— The fact that the additional amount of water diverted by the municipality was taken from the underflow of the stream, does not prevent the lower owner, having a prior right to surface water, from enjoining the diversion, when the bed of the stream is composed of materials so porous that the taking of a substantial part of the underflow from the channel at any point on the stream would cause a corresponding diminution in the surface stream below.

ID.—APPROPRIATION BY ADVERSE USE—USE BY LESSEE.—One claiming a right to water by appropriation acquired by continuous adverse use may establish his right as well by a showing that he used it through his lessees as by showing that he used it himself all the time.

APPEAL from an order of the Superior Court of Siskiyou County refusing a new trial. Charles M. Head, Judge presiding.

The facts are stated in the opinion of the court.

Charles W. Strother, and Willard G. Cram, for Appellants.

B. K. Collier, for Charles H. Calkins et al., Respondents.

L. F. Coburn, for Yreka City, Respondent.

SHAW, J.—This is an appeal by plaintiffs from an order denying their motion for a new trial.

The action involves a determination of the separate rights of several persons to the waters of Greenhorn Creek in Siskiyou County. The plaintiffs challenge the decision only so fas as it declares the respective rights of the defendants Charles H. Calkins, Andrew S. Calkins, and the city of Yreka.

The plaintiffs own about five hundred acres of land known as the "Quinn Place," situated on or near Greenhorn Creek, and a ditch known as the "Lower Greenhorn ditch," through and by means of which they and their predecessors in interest have been for many years conducting the waters of the creek to said land for use thereon in irrigation and mining. The

defendants, Charles H. Calkins and Andrew S. Calkins, each owns lands bordering upon said creek situated above the point where the plaintiffs' ditch takes water therefrom and above the lands of the plaintiffs. The city of Yreka claims the right to divert water from said creek by means of a drain at a point half a mile above, and also by a submerged dam two miles above, the head of the plaintiffs' ditch and to conduct the same to said city for the use of its inhabitants.

The court found that Charles H. Calkins owns one hundred and twenty acres of land and that Andrew S. Calkins owns seventy-nine acres, that both tracts are situated on Greenhorn Creek; that they and their predecessors in interest, ever since the year 1882, have used upon the said lands, adversely and under a claim of right, for mining, irrigation, and domestic use, a flow of water from the creek equal to forty-five inches measured under a four-inch pressure, each using one half thereof, and that said water is necessary for said uses; that plaintiffs own the lands as alleged in the complaint and the Lower Greenhorn ditch, but that they have not used the water of said creek upon their lands under a claim of right or otherwise, except such as came down to them in said creek after the several defendants had taken the quantity so found to have been used by them respectively, and that the use of the plaintiffs was not adverse to that of defendants; and that the defendants have the right to take and use said water without plaintiffs' consent and thereby prevent the same from entering said Lower Greenhorn ditch. It is claimed that these findings are contrary to the evidence.

With respect to the Calkins's land, all doubts as to the superior rights of the owners thereof to the use of the waters of the creek thereon would seem to be settled by the fact, appearing throughout the evidence and not disputed, that these lands are riparian to the stream and are situated above the point of diversion of the plaintiffs. The complaint states that the plaintiffs' right to the water is a right acquired by adverse use or prescription and not as a riparian right. Even if they were also riparian owners, they show no injury, since they do not allege that the Calkins's lands use more than a fair share of the water. The use of water diverted from the stream at a point below the land of a riparian owner is not ordinarily adverse to him. No right against him is obtained

by such use, although under an adverse claim of paramount right, unless his own use has been interfered with by the adverse use below, a thing which can seldom occur. "As the upper riparian proprietor's right to object to any use or diversion of the water below ceased when it had flowed past his boundary, any such use could not work an invasion of his rights, and he was not called upon to protest against it." (*Hargrave* v. *Cook*, 108 Cal. 79; 30 L. R. A. 390, [41 Pac. 20].) In such a case the upper user "could not complain, and title by prescription cannot be acquired unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom the acts are performed." (*Lakeside Ditch Co.* v. *Green*, 80 Cal. 183, [22 Pac. 76]; *Anaheim Water Co.* v. *Semi-tropic Water Co.*, 64 Cal. 192, [30 Pac. 623].) "It is equally well settled that no right to water can be acquired by prescription where the lower riparian proprietor has taken the water out of the stream at a point on his own land and has used such water only as the upper riparian proprietor permitted to pass down through his land to the lower owner; such use by the latter is not adverse in the sense required to give a right by prescription. Nor can the non-user of water by the upper riparian owner of land be invoked to strengthen the claim of the appropriation by prescription by the lower riparian owner under like circumstances." (*Bathgate* v. *Irvine*, 126 Cal. 140, [77 Am. St. Rep. 158, 58 Pac. 444].) The same rule applies where the lower appropriator or user is not a riparian owner and takes the water for use on lands not riparian. (*Cave* v. *Tyler*, 133 Cal. 567, [65 Pac. 1089].) There was no evidence that the use of the water by the plaintiffs had actually interfered with or prevented its use on the Calkins's land for a sufficient length of time to give plaintiffs title by prescription against the said defendants as riparian owners.

If the case is viewed simply as one of rival claimants by appropriation or prescription, we think the evidence was sufficient to support the findings of continuous adverse use on the Calkins's land and a prescriptive right in the owners thereof to such use. The trial seems to have been conducted on the theory that such proof was necessary. While there was some evidence of interference by plaintiffs and their predecessors with the use on the Calkins's land, it was merely

temporary, and did not divest the prescriptive right previously acquired. The finding of a prescriptive right to the forty-five inches of water assigned to those lands by the judgment is supported by the evidence. It is unnecessary to relate the evidence on the point.

With regard to the city of Yreka, the court found that it was entitled to take and use water of the creek to the extent of fifty inches, miner's measurement, through the Scheld drain. It is not seriously contended that this finding is not sustained. The city has been diverting and using that quantity for many years, taking it from a point about half a mile above the plaintiffs' ditch by means of the tunnels or drains known as the "Scheld drain." Its right to take it is established, both by proof of continuous adverse use for more than five years and by judgment against plaintiffs' predecessors in interest in favor of the city's predecessors in interest. The fact that less than fifty inches was taken sometimes during the summer seasons because the full amount of fifty inches was not then flowing in the creek, is immaterial, since the evidence also shows that at such times the city took it all and the plaintiffs could not obtain any water from the creek.

The court also found that the city has the right to take thirty-five inches of the water of the creek by means of a submerged dam built by it at a point about two miles above the plaintiffs' ditch. This dam was built and this diversion was begun in 1903, less than five years before this action was begun. No prescriptive right thereto has been acquired by the city. The judgment gives it this right in addition to the fifty inches taken by the Scheld drain. The plaintiffs claim that this finding is contrary to the evidence. If this thirty-five inches was claimed as a part of the fifty inches which the city had acquired the right to divert by means of the Scheld drain, it would be a mere change of the place of diversion which the city might make if it caused no injury to plaintiffs. (*Barton* v. *Riverside Water Co.*, 155 Cal. 517, 23 L. R. A. (N. S.) 331, [101 Pac. 790].) We cannot see how this alone could injure the plaintiffs. But it is adjudged to the city as an additional right. If it is permitted, the city will have the right to divert from the waters of the creek eighty-five inches of water, instead of only fifty inches as before. If this additional diversion will materially diminish the quan-

tity flowing down the creek and into plaintiffs' ditch, re-
ducing it to less than forty-five inches, it will constitute an
injury to their property rights which they would have a
right to enjoin, since the evidence clearly shows that they
have claimed and used for many years a flow of forty-five
inches, taken from the surface stream, or as much thereof
as would reach their ditch, and have acquired a right thereto,
subject only to the prior rights of the parties above.

It is claimed on behalf of the city that this thirty-five inches
consists wholly of the underflow, and that as the plaintiffs
take only from the surface flow, the two sources are distinct,
and plaintiffs will be deprived of no water to which they
have a legal right. This proposition cannot be maintained.
It is admitted by the pleadings that the creek-bed is com-
posed of boulders and coarse gravel from six to twelve feet
deep, through which water very readily sinks to the grooves
and channels of the bedrock. All the evidence shows that
this is the condition from the submerged dam down to and
including the site of the plaintiffs' ditch. Antone Castro,
one of the plaintiffs, testified that when the subsurface waters
are taken from the bedrock, it takes that much more of the
surface water to fill up the gravel, and that if the subsurface
water is taken out of the creek above the head of their ditch,
the surface flow would sink through the gravel and would
not reach their headgate, and that they claimed the subsur-
face water as a support for the surface stream. William
Calkins testified that there would be no surface flow until
the gravel was full of water from the bedrock to the surface.
With a creek bed as porous as this is conceded to be, no
evidence is necessary to establish the fact that the taking of
a substantial part of the underflow from the channel at any
point on the stream would cause a corresponding diminution
in the surface stream below. The law of gravitation would
raise a presumption that it would operate to that effect. One
who would establish the contrary would have the burden of
proving conditions which would prevent such diminution.
There is no evidence to the contrary. Two of the city trus-
tees testified that the building of the cement dam did not
seem to diminish the flow of water in the Scheld drain. That
drain took water underground from bedrock and to the extent
of only fifty inches. The fact that there still remained that

quantity of underflow after deducting the thirty-five inches taken at the submerged dam would not prove that the taking of the latter amount did not diminish the flow on the surface at plaintiffs' ditch. Of course, when the creek was so low that no water would rise to the surface into their ditch if the thirty-five inches were not taken out above, that diversion would cause plaintiffs no injury. At such times the city might be permitted to take it. But inevitably the continuous taking away of thirty-five inches of either the surface flow or underflow above would cause the surface flow at plaintiffs' ditch to fail sooner than if such diversion were not made at all. As soon as the flow diminished so that it would all pass through the sand and gravel, none would appear on the surface. It is plain, for these reasons, that the finding that the city has the right to take this thirty-five inches is not sustained.

The court found that plaintiffs had no right to take any of said water as against the city of Yreka. This finding was evidently based on the idea that the city's diversion of additional water by means of a dam was not an infringement on any right which the plaintiffs might have to take water from the surface of the stream two miles below. We think the court mistook the law upon this subject, or, what amounts to the same thing, that it failed to perceive the necessary effect of the diversion of the underground water from a porous stream-bed upon the surface-stream below. The finding is to this extent contrary to the evidence. A new trial with respect to the issues between the city of Yreka and the plaintiffs should have been granted.

The plaintiffs complain of a ruling of the court excluding a certain lease made by C. H. Calkins to some Chinamen in 1896 purporting to lease to them the right to use the forty-five inches of water claimed by Calkins except for two days and two nights each week. This evidence was offered by plaintiffs in rebuttal of Calkins's statement that he used the water for irrigating during the whole of each week. While it might tend to contradict his testimony in that respect we do not think it was material to the plaintiffs' case. Calkins, as we have seen, was a riparian owner and was entitled to use the water on his land whether he claimed a right to it or not. If we consider him in the aspect of one claiming only by

appropriation such right could be acquired only by continuous adverse use. This right would be as much supported by a showing that he used it through his lessees as by showing that he used it himself all the time. The effect of the use by the Chinamen would not impair the prescriptive right of Calkins but on the contrary would strengthen and support it.

There is no serious conflict in the evidence or dispute concerning essential facts, or any good cause for a new trial, except upon the issues regarding the right of the city to divert water in addition to the fifty inches which it has long had the right to take through the Scheld drain.

The order denying a new trial is reversed and the judgment vacated only so far as the issues between plaintiffs and the city of Yreka relating to alleged taking of water by means of the submerged dam are concerned, and the cause is remanded for a new trial of those issues alone. As to all other issues the order is affirmed.

Angellotti, J., and Sloss, J., concurred.