[Civ. No. 365. Fourth Appellate District.—February 27, 1931.]

PEOPLES DITCH COMPANY et al., Appellants, v. FOOT-
HILL IRRIGATION DISTRICT et al., Respondents.

W. R. Bailey and H. Scott Jacobs for Appellants.

A. E. Chandler, Guy Knupp, R. C. Leib and Sidney J. W. Sharp for Respondents.

JENNINGS, J.—Plaintiffs appeal from the judgment of the trial court denying an injunction.

Both appellants and respondents are appropriators of water from Kings River. Kings River is a natural watercourse having its source in the Sierra Nevada Mountains and flowing westerly and southwesterly through the Kings River alluvial fan. At a point approximately forty miles from the place where it leaves the foothills the river divides, one branch flowing in a southerly direction and the other flowing northwesterly through lands served by members of respondent Murphy Slough Association. At approximately the point where Kings River emerges from the foothills there is a government gauging station, also a gauge observer's station and various devices for measuring and rating the water of the stream. This point is called Piedra and the diversions from Kings River by all parties to the present action are downstream from Piedra. The diversions of appellants Peoples Ditch Company and Last Chance Water Ditch Company are upstream from the diversions of the respondent Murphy Slough Association and the diversion of appellant Lemoore Canal and Irrigation Company is downstream from the diversions of respondents. The distance from Piedra to the head of the ditch of the Peoples Ditch Company is approximately thirty-five miles. The diversion of the respondent Murphy Slough Association is approximately ten miles further downstream.

From time to time various efforts have been made by those having appropriative rights to the water of Kings River to allot the water of the stream among themselves. On May 3, 1927, an agreement entitled "Water Right Indenture" was entered into by the parties to the present action by which a monthly flow schedule establishing the quantity of water allotted to each party at the times specified was approved and adopted. On the same date, for the purpose of carrying into execution the plan and schedule of the "Water Right Indenture" an agreement entitled "Administrative Agreement" was executed by the parties to the former agreement. In both of these instruments, it is clearly and specifically stated that the respondent Foothill

Irrigation District had not theretofore diverted and appropriated water from Kings River but that said Foothill Irrigation District desired, if it could lawfully accomplish it, to become a diverter from the river.

On November 28, 1924, an agreement was entered into by the Murphy Slough Association and the Foothill Irrigation District by which the Association agreed that the Irrigation District might enter upon Kings River at some convenient diversion point and take from the river such quantity of the water up to 250 second-feet as the Murphy Slough Association should, during the term of the agreement, be entitled to divert therefrom subject to the right of the Association to demand and receive all of the water in excess of 100 second-feet; and the further right of the Association to receive its total entitlement of water during the month of November in each year. In exchange for the river water thus proposed to be diverted by the Foothill Irrigation District the Irrigation District agreed that it would acquire a certain tract of water bearing land in proximity to the intake of the Murphy Slough Association's canal and would bore wells and erect pumping plants thereon and would deliver to the Murphy Slough Association an amount of water pumped from such wells equal to the quantity that the Irrigation District should divert from Kings River and ten per cent of such quantity in addition thereto. This agreement was throughout the trial referred to as the "Exchange Agreement". The evidence produced at the trial of the cause shows that the Foothill Irrigation District proposed, in accordance with the provisions of the exchange agreement, to enter upon Kings River at a point called Avocado, upstream from the diversions of the appellants and distant approximately twenty-five miles from the head of the Peoples Ditch Company canal, and there to divert from Kings River such quantity of water as it should be entitled to take by virtue of its contract with the Murphy Slough Association. It is this proposed diversion which appellants sought by this action to prevent.

At the conclusion of the trial, the court found specifically that the proposed diversion by the Foothill Irrigation District might be made without injury to the appellants herein and rendered its judgment denying injunctive relief. Appellants contend that this finding of the trial court is not

supported by the evidence. Upon this important phase of the case the evidence was in direct conflict but a careful examination of the transcript discloses that there is ample evidence of substantial character to support the finding complained of. In accordance therefore with the familiar and well established rule that an appellate court will not disturb findings of the trial court where there is a conflict in the evidence, the finding of noninjury to appellants by reason of the proposed diversion by the Foothill Irrigation District must stand.

It is however most zealously contended that the proposed diversion may not lawfully be made even though the finding of the trial court that it may be accomplished without injury to appellants is sustained. It is said that section 1412 of the Civil Code which permits a change in the point of diversion by an appropriator of water if others are not injured thereby is limited in its application to a change in the place of diversion of the entire quantity of water entitled to be taken and that it has no application to and does not permit a change in the place of diversion where it is proposed to split the appropriation. In support of this contention the case of *Consolidated Peoples Ditch Co.* v. *Foothill Ditch Co. et al.,* reported in 205 Cal., at page 54 [269 Pac. 915, 921], is cited by counsel for appellants. This decision of the Supreme Court is obviously so thoroughly relied upon by counsel for appellants that careful consideration of it is warranted. The facts of the case are as follows: An irrigation district purchased stock in certain corporations which owned accrued rights of appropriation of the water of a stream and which possessed ditches for the diversion of such water as each corporation had become entitled to receive among the owners of capital stock of each. The irrigation district then contracted to purchase an interest in a ditch which took off from the river above the points of intake of plaintiffs' ditches and proposed to divert by this ditch an amount of water equaling the aggregate amount of water to which by virtue of its ownership of stock in the several corporations it would have been entitled to receive. The plaintiffs succeeded in securing a preliminary injunction the granting of which was sustained by the Supreme Court. It was decided by the Supreme Court that the owners of stock in those corporations in which the irrigation district

had become a stockholder were equitable owners of that proportion of the properties of each of such corporations which their respective stock ownerships bore to the entire subscribed capital stock of each corporation and that only to that extent were such stockholders owners of the water rights which the corporation possessed and over whose distribution it exercised exclusive control. It was said by the court that the sole right of each stockholder in each corporation was the right to have his proportionate share in the water owned by the corporation supplied to him through the instrumentalities provided by the corporation for such distribution and in no other manner. The court then goes on to point out that to sustain the contention of the irrigation district that by reason of its ownership of stock in various corporations it was entitled to go higher up the river than the points of intake of each corporation of which it was a stockholder and there to establish a system of ditches sufficient in capacity to enable it to divert the amount of water represented in its aggregate holdings of corporate stock would necessarily result in the conclusion that each stockholder in each of said corporations would have similar rights and the court said: "It is too plain for argument that such an admission would result in a state of inextricable discord and confusion among the owners of water rights of various sorts along the course of not only the Kaweah river, but of every other river and stream of water in California where similar rights, by appropriation or otherwise, in the flowing waters of these streams are in the course of acquisition and exercise. The creation or threatened danger of such a consequence would of itself supply a sufficient reason for the use of the injunctive processes of the court in the way of its prevention."

This language of the Supreme Court, so strongly relied upon by appellants herein, must of course be read in connection with the main problem which the court had before it for solution. That problem had to do with the rights of stockholders in corporations which own water rights in streams and which possess ditches and other instrumentalities for the diversion and distribution of the water which they own to their respective stockholders. There is no holding by the court that there may not be a change in the point of diversion by an appropriator of water of a portion of the water

to whose use he is entitled. In the case of *Perry* v. *Calkins,* 159 Cal. 175 [113 Pac. 136, 138], the trial court found that the city of Yreka was entitled to take fifty inches of water through a certain ditch one-half mile above the ditch of plaintiffs. The court also found that the city had a right to take thirty-five inches from the creek by reason of a submerged dam built by it about two miles above plaintiffs' ditch. In its decision the Supreme Court says: "If this thirty-five inches was claimed as a part of the fifty inches which the city had acquired the right to divert by means of the Scheld drain, it would be a mere change of the place of diversion which the city might make if it caused no injury to plaintiffs (*Barton* v. *Riverside Water Co.,* 155 Cal. 517 [23 L. R. A. (N. S.) 331, 101 Pac. 790])."

In this case therefore the Supreme Court recognizes the right of an appropriator to divide an appropriation. We fail to discover any sound reason why an appropriator of water from a stream may not divide the appropriation provided it does not appear that by such division injury will result to others who have vested rights in such water. It may well be that some inconvenience will result from the proposed division by the Irrigation District of its appropriation. The division of the appropriation may even result in some confusion but unless it is made to appear that injury will result therefrom to appellants they are not entitled to the aid of equity to prevent the division. The limitation which counsel urge should be read into section 1412 of the Civil Code is not warranted.

 Numerous specifications of errors which it is contended were committed by the trial court and numerous particulars in which it is claimed that the evidence is insufficient to support the findings and judgment of the trial court are assigned. A careful review of the evidence appearing in the printed transcript fails to disclose any harmful errors committed by the trial court. Nor does it appear that the findings and judgment of the court in any material respect lack the necessary justification of evidence.

 In its conclusions of law the trial court determined that the defendants were entitled to recover two-thirds of their costs of suit and it was so decreed by the judgment. The contention of counsel for appellants that costs should have been allowed appellants is without merit. The complaint

was for an injunction and the action is purely equitable in its scope. The allowance of costs rested therefore in the discretion of the court (Code Civ. Proc., sec. 1025; *Abram* v. *Stuart*, 96 Cal. 235 [31 Pac. 44]; *Gallatin* v. *Corning Irr. Co.*, 163 Cal. 405 [Ann. Cas. 1914A, 74, 126 Pac. 864]).

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1931.