[Civ. No. 15752. First Dist., Div. Two. Mar. 26, 1954.]

BOB SPEKA, Respondent, v. JOHN SPEKA, Appellant.

Young, Ryan & Whitton, Joseph J. Yovino-Young, Albert K. Whitton and Ivan C. Sperbeck for Appellant.

Albert Kessler, Kessler & Kessler and Ralph Nathanson for Respondent.

KAUFMAN, J.—This is an appeal by defendant and cross-complainant John Speka from a judgment in favor of plaintiff and cross-defendant Bob Speka in a suit for dissolution of a partnership, an accounting and contribution. Judg-

ment was in favor of plaintiff Bob Speka for a contribution in the amount of $6,083.30. The suit was filed on November 7, 1949. The court began hearing of the matter on January 22, 1951, and on January 26, 1951, a referee was appointed to render an accounting. He made his report on October 15, 1951.

Plaintiff and defendant herein are brothers. Plaintiff and respondent Bob Speka had been a partner in the Golden Krust Baking Company from 1928 until 1936 when he bought out his partners. He was sole owner of the business until January, 1944, when he gave his brother John a half interest therein. In 1941 plaintiff had brought defendant and his family from South America to this country, took them into his home and gave John a job in the bakery. Defendant's duties were menial tasks, and even after he became a partner he never took an active part in management of the business. When plaintiff took John in as a partner a partnership agreement was drawn up and he paid out of his own funds a gift tax to the state on the half interest valued at $10,000. At this time defendant did not have much knowledge of the English language.

The baking company had been operated on rental premises in Oakland, but shortly after the partnership agreement was entered into, plaintiff bought the property and executed a lease from himself as lessor to the partnership as lessee. Defendant was one of the parties executing the lease for the partnership. The source of the funds with which the property was purchased was disputed, but the referee found, and the trial court confirmed his finding, that the purchase money came from the plaintiff's separate funds and that no partnership funds were used.

After the lease was entered into, extensive improvements were made to the plant which were paid for out of partnership funds. These were set up on the books to be amortized in five years, the period for which the lease had been drawn. Defendant knew of these improvements, agreed to them, and designed some of them.

The partnership under plaintiff's management made sizeable profits for a few years. In 1944 there was a profit of $44,009.71; in 1945, $33,083.05; in 1946, $18,607.16; in 1947, $1,718.81. In 1948 there was a loss of $9,009.54, and in the first half of 1949, a loss of $8,245.95. During the years when there was a profit, it was equally divided between the brothers.

When the business began losing money, plaintiff informed defendant of this fact from time to time, but got no response.

In July, 1949, plaintiff called defendant in to a meeting at the bakery office. The company accountant was present. The business situation was discussed, and plaintiff suggested that in order to save it each partner should contribute additional capital of about $15,000, or that either of the partners buy out the other. Defendant would not consider the proposals, but flew into a rage, accused plaintiff of dishonesty and threatened to kill plaintiff. Defendant denied that he had threatened violence, but the accountant also testified that defendant threatened to kill both him and plaintiff.

The business obligations then amounted to $15,926.38, which plaintiff paid by borrowing on the security of other real property which he owned. Later he borrowed $15,000 more to pay off further losses. During the time when the business was in a precarious condition, plaintiff drew no money out, but defendant continued to draw one hundred dollars each week.

No rent had been paid to plaintiff as lessor for more than a year. Therefore, after the stormy conference in July, 1949, plaintiff notified defendant that in accordance with the terms of the partnership agreement he was terminating the partnership as of July 15, 1949, and gave notice to the partnership that the lease was terminated as of July 15, 1949, for non-payment of rent. No question is raised herein as to legal sufficiency of these notices. Plaintiff continued to operate the business for the benefit of the creditors after the termination of the partnership, but his transactions thereafter are not pertinent here, as nothing subsequent to the termination was considered in the accounting.

Appellant contends that the judgment is erroneous from an accounting standpoint in that appellant was not allowed full credit for the item of $2,582.86 taxes which he was forced to pay for the partnership by a levy on his bank account. (Finding 8.) In Finding 10 the court found the liabilities of the partnership (including the $2,582.86 taxes paid by appellant) to be $26,482.28; the assets, $9,269.11, and the net loss of the partnership to have been $17,213.17, of which one-half due from each partner amounted to $8,606.58. Appellant John Speka was then given credit for one-half the amount of taxes paid by him or $1,291.43 plus half the excess of an overdraft of $2,463.69 of partnership funds by Bob Speka or $1,231.85, a total credit of $2,523.28. This

credit was subtracted from $8,606.58, and judgment rendered for the balance of $6,083.30 due to respondent Bob Speka.

 Appellant is correct in his contention that full credit for the tax payment should have been allowed. He has discharged his own half of the firm's liability for taxes, and it therefore being paid, it was proper to deduct half the taxes from his half of the liabilities. But it is to be remembered that he has also discharged his partner's half of the tax liability, reducing his partner's net loss by the sum of $1,-291.43. If he is not given credit for this sum he has in effect been held liable for the partnership's total liability for taxes. Appellant shows that his net loss will be the judgment of $6,083.30 plus $2,582.86 paid for the taxes or a total of $8,666.16, whereas respondent will pay out a total of $23,899.42 (accounts payable as shown above, less the tax item) and will receive the excess overdrafts of $2,463.69, assets of the business of $9,269.11, and judgment against appellant for $6,083.30, or total receipts of $17,816.10. Subtracting receipts from disbursements, there results a net loss of $6,083.32, whereas appellant's net loss is $8,666.16. The difference between these figures is $2,582.86, the tax item. If the whole of $2,582.86 had been credited to appellant instead of half in arriving at the amount of the judgment, then the net losses would have been equal, as respondent's receipts would have been $1,291.43 less and appellant's disbursements $1,291.43 less, thus cancelling the difference of $2,582.86 between the net losses of each partner.

Respondent does not answer this contention satisfactorily, stating only that the liabilities are $17,213.17 and one-half that amount of $8,606.58 is the contribution due from each partner. The subject of credits due appellant is passed over by saying that appellant has not referred to transcript references which might provide pertinent information. However, the calculations here involved are all based on data used by the trial court in the findings. Respondent says that "as to what taxes John may have paid in addition to those set forth in these findings . . . we cannot determine," as there are no transcript references. It is quite obvious that the only item of taxes listed in the Accounts Payable by the trial court is the same item of taxes which the court in Finding 8 determined had been paid in its entirety by appellant and which in Finding 10 it erroneously credited to appellant the half thereof instead of the whole.

The judgment is therefore excessive in the amount of $1,-291.43 and it must be modified to that extent if it can be upheld as against the remainder of appellant's contentions. Judgment should have been rendered in the amount of $4,791.87.

It is next urged that interest on the judgment from the date of dissolution of the partnership was improperly allowed by the court, from the date when the partnership was dissolved. Appellant states that there appears to be no California authority on the subject, but cites 40 American Jurisprudence 381, to the effect that whether or not interest should be allowed in such cases depends largely upon the circumstances of the case, but that ordinarily interest should not be allowed until after a balance is struck unless there is a different agreement between the partners "or unless under the peculiar facts and circumstances the equities demand that interest be charged." ■ If there is no unnecessary delay, the delay necessarily or incidental to the winding up of partnership affairs cannot be ascribed to one partner more than to the other and interest is not ordinarily allowable. (40 Am.Jur. 383, 386, §§ 362, 364.)

In the present case, there was evidence that appellant made it impossible to settle the partnership affairs amicably, making it necessary for respondent to sue for an accounting. Appellant's conduct in threatening to kill his brother and accusing him of dishonesty no doubt weighed against him when the trial court considered the equities of the situation. Appellant cites *Axell* v. *Axell*, 114 Cal.App.2d 248, 256 [250 P.2d 182] and *Lineman* v. *Schmid*, 32 Cal.2d 204 [195 P.2d 408, 4 A.L.R.2d 1380], as authority that interest is not allowable until the amount due has been determined by judicial process. These cases are concerned with the subject of liquidated and unliquidated damages in actions on contract and are not applicable to a suit in equity.

In *Watson* v. *Kellogg*, 129 Cal.App. 592 [19 P.2d 253], an action for an accounting between partners, interest on the amount found due was held to have been properly allowed, since the money was not turned over to plaintiff when it should have been, hence the withholding was wrongful. In *Bowman* v. *Carroll*, 120 Cal.App. 309 [7 P.2d 734], the court, citing 47 Corpus Juris, page 1182, section 876 as authority, held that although ordinarily interest is not allowed on unascertained balances remaining in one partner's hands after dissolution, where circumstances are such as equitably demand the payment of interest, it will be allowed from the

time when the accounts should have been settled, as where one partner retains money an unreasonable time or where he wrongfully withholds it. In *Freese* v. *Smith*, 114 Cal.App. 2d 283 [250 P.2d 261], a partnership accounting case, the trial court awarded interest from the time the partners decided to liquidate. They reached no agreement on the accounts and it was not until the judgment of the trial court was rendered that the amount was finally determined. This court held that it was error to award interest, and that the usual rule as stated in 47 Corpus Juris 1182, section 876 should apply. The court cited *Bowman* v. *Carroll, supra*, but pointed out that in that case interest was awarded only from the date the complaint was filed, and noted the reprehensible conduct of the partner against whom interest was awarded, a factor missing from the Freese case.

■ In the instant case the amount owing by appellant was undetermined at the termination of the partnership. But in view of the conduct of appellant, it cannot be said that the trial court abused its discretion in penalizing him with interest from the date of the dissolution of the partnership.

■ It is argued that costs should not have been awarded to respondent, but it has been held in *Owen* v. *Cohen*, 19 Cal.2d 147 [119 P.2d 713], that costs may be allowed in a partnership proceeding, and that in a proceeding in equity such as this, the disposition of costs rests in the discretion of the trial court. (See also *Estrin* v. *Fromsky*, 53 Cal.App.2d 253 [127 P.2d 603]; *People Ditch Co.* v. *Foothill Irr. Dist.*, 112 Cal.App. 273 [297 P. 71].) If it was not an abuse of discretion to award the interest as above noted, then it was not an abuse of discretion to award the costs in this manner.

Appellant maintains that it was error not to take the costs of the improvements into consideration. In the accounting no allowance was made for value of the improvements, and respondent was not charged nor was appellant credited with any amount by which the value of the realty was enhanced thereby. It is appellant's contention that since the improvements, which were of substantial value, were made with partnership funds, appellant was entitled to be credited with half their value. The rule stated in *Minikin* v. *Hendrix*, 15 Cal.2d 338 [101 P.2d 473], is that where improvements purchased with partnership funds are placed on realty owned by one of the partners who is compensated by the partnership for the use thereof, *and no contract has been entered into by the partners respecting the*

*disposition of said improvements in event of dissolution*, the improvements become a partnership asset, and the nonland-owning partner is entitled to his proportionate share of their value. (Emphasis ours.)

Respondent admits that appellant has stated the correct rule, and notes that in the present case, however, the parties had entered into a contract for disposition of the improvements in event of dissolution. The lease provided as follows: ''Nevertheless, no additions, alterations or repairs shall be made to said demised premises without the written consent of the lessor, and all locks, bolts, repairs or alterations and/or improvements affixed to or made upon said demised premises by either of the parties hereto, except counters, shelving, moveable partitions and other trade fixtures placed thereon by the lessee, shall be and become the property of lessor, and shall remain upon and be surrendered with the premises as part thereof upon the termination of this lease.'' It is respondent's contention that this is an agreement providing for disposition of the improvements. Appellant cites *Swarthout* v. *Gentry*, 62 Cal.App.2d 68 [144 P.2d 38], a case which he says is the converse of the rule in the Minikin case, wherein the partnership was held bound to compensate one partner for improvements made by him on partnership realty. The court in its opinion noted that the house was built by one partner with the knowledge and consent of the other *without any agreement other than that one partner should have the use of it.* (Emphasis ours.) Appellant argues that the clause in the lease is not an agreement taking the case out of the general rule, declaring that it adds nothing to the rule of law that title to improvements attached to the realty pass to the owner of the realty. It is our view that the clause in the lease eliminated any interest of the partnership in the improvements placed on the real estate. It was a valid agreement between the parties to the lease who are also the partners here.

Appellant argues that respondent was unjustly enriched and that the failure to account for the value of improvements is a violation of his duty to his partner, citing section 15021, Corporations Code, to the effect that a partner is accountable to the partnership for any benefit and holds as a trustee for it any profits derived by him without the consent of the other partners, from any transaction connected with formation, conduct or liquidation of the partnership or from any use of its property. The significant phrase is ''without the consent of the other partner.'' If a written contract has

been entered into, such as the lease herein, this contention is disposed of.

Appellant has stressed the fiduciary relationship, and the advantage taken of him by his brother who was more familiar with the English language and more experienced in business affairs. Nevertheless, appellant demonstrated that he was not without some business acumen. When his brother advised him that the lot adjoining the bakery was for sale, appellant bought it for $1,850, and less than a year later proposed to sell it to purchasers whom respondent regarded as undesirable neighbors for the bakery. To prevent appellant from going through with the deal respondent purchased it from his brother for $3,800, a profit to appellant of $1,950. Appellant was always on hand to take his profits from the business, but never parted with money when it was in difficulties, even though the partnership interest had been a gift to him from his brother. The trial judge who listened to him testify most probably concluded that he was well able to take care of himself in the business world.

Appellant says that the trial judge may have concluded that because the improvements were written off the books by being amortized at the rate of 20 per cent per year, they were valueless, but points out that on the date the partnership ended there was still $1,441.79 that had not been amortized even though at the time of the trial it had been completely amortized. There is no finding to show that the court proceeded on this theory, although there is a finding that the lease was cancelled and terminated on July 15, 1949, hence it is entirely probable that the court concluded that no accounting was required for the improvements because of the terms of the lease.

■ It is contended that the value of the realty was improperly excluded from the accounting, but this is disposed of by the trial court's finding which appellant has not attacked as unsupported, that the property was purchased with separate funds of respondent and not with partnership funds.

The final contention is that the good will of the business was improperly alloted to respondent with no allowance for its value. There is no finding as to good will. There is a finding that Bob Speka has the right to continue the bakery business under the name of "Golden Krust Baking Company." Appellant apparently confuses the partnership name with the good will of the business. ■ In 40 American Jurispru-

dence 314, section 268, it is said that as a general rule upon dissolution of a commercial partnership the succeeding partners have the right to carry on the business under the old name in the absence of a stipulation forbidding it. The judgment, therefore, merely reaffirms the general rule that respondent has the right to continue business under the firm name. Appellant does not contend that he advised the court that he intended to also go into the bakery business. The court's finding does not necessarily imply that appellant has no right to the use of the name.

In view of the foregoing the judgment must be modified by reducing the same to the sum of $4,791.87, and as so modified, affirmed.

Judgment affirmed as modified with each party to bear his own costs.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1954.