Filed 8/31/15  Koka v. Shastri CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RUKMANI KOKA, | B253523 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC037226) |
| v. | |
| SUNIL SHASTRI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Higa, Judge.  Affirmed.

Law Offices of John R. Walton, John R. Walton, and Walter W. Moore for Defendant and Appellant.

Curd, Galindo & Smith and Joseph D. Curd for Plaintiff and Respondent.

_____

Plaintiffs Rukmani Koka, Lakshmana Koka, and Ramachandra Pulumati and defendant Sunil Shastri were partners in a real estate investment, each owning a 25 percent stake in the partnership's only asset, real property located at 18612 and 18612 ½ Pioneer Boulevard in Artesia. Plaintiffs sued defendant for rents from the partnership's real property, and defendant cross-complained for rents and an accounting. The parties settled, with the court retaining jurisdiction under Code of Civil Procedure section 664.6 to enforce the settlement. Pursuant to the settlement, the trial court ordered an accounting.

Before the accounting was completed, plaintiffs transferred their interests in the Pioneer Boulevard property to nonparties Venkatesh Koka and his business, Realty Specialties, Inc. Venkatesh Koka and Realty Specialties entered into a separate Memorandum of Agreement with defendant concerning the partnership property, which among other things provided that Realty Specialties was the successor to plaintiffs' claims in this action. After the assignment of claims in this action, Rukmani Koka moved for court approval of the partnership's accounting. The trial court approved the accounting, and ordered defendant to pay the sums due under the accounting to Venkatesh Koka and Realty Specialties.

Defendant appeals from this judgment, urging that the plaintiffs lost standing to continue prosecuting the action after they transferred their interests to Venkatesh Koka and Realty Specialties. Alternatively, defendant contends the trial court abused its discretion in approving the accounting, arguing it was incomplete because it failed to consider the partners' capital accounts, and that the trial court erroneously awarded prejudgment interest. Finding no error, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs and defendant formed a partnership to purchase and operate a parcel of commercial real estate on Pioneer Boulevard in Artesia. In 2002, plaintiffs sued defendant, alleging defendant misappropriated the rents generated by the property. Defendant cross-complained, also alleging misappropriation of the rents and other claims. Defendant's cross-complaint prayed for an accounting.

2

In 2004, the parties reached a settlement. At a September 8, 2004 hearing, nonparty Venkatesh Koka appeared as an agent of the plaintiffs (who were in India), along with plaintiffs' counsel. Plaintiffs' counsel represented that Venkatesh Koka had authority to act on the plaintiffs' behalf. The parties set forth the terms of their settlement on the record.

The parties agreed defendant would deposit $64,120 into the trust account of his attorney to hold on behalf of the partnership pending dissolution and liquidation of the partnership assets, at which time those funds would be split 60 percent to the plaintiffs and 40 percent to defendant. They also agreed defendant owed plaintiffs $98,700 for expenses they incurred on behalf of the partnership. The parties further agreed that the property would be placed on the market, and sold for the best offer exceeding $800,000 within 60 days. Plaintiffs would receive the $98,700 from the sale proceeds, and the remaining proceeds would be split between plaintiffs and the defendant, with the plaintiffs receiving 60 percent and defendant receiving 40 percent. If the property did not sell within 60 days, it would be relisted for $750,000. Any of the partners also had the option, within one week of the settlement agreement, to purchase the property for $800,000 or more. During the pendency of the sale, the parties would split any rents from the property 60-40 (after the mortgage payment was deducted from the rent proceeds). The parties agreed the court would retain jurisdiction to enforce the settlement. The trial court dismissed the case and retained jurisdiction under Code of Civil Procedure section 664.6 to enforce the settlement.

In February 2012, plaintiff Rukmani Koka moved to enforce the settlement agreement. The motion urged that on September 15, 2004, plaintiffs Rukmani Koka and Ramachandra Pulumati made a written offer to purchase the Pioneer Boulevard property for $800,000. They were the only partners to timely exercise the purchase option provided for in the parties' settlement agreement. Defendant made a belated "counter-offer" to purchase the property for the same price on September 17, 2004. Neither plaintiffs nor defendant would recognize or honor the other's offer, and the property was not placed on the market for sale. Moreover, according to plaintiff, defendant did not

3

turn over or account for any rents he had collected. Defendant also failed to pay his proportionate share of the maintenance costs of the property. The motion also argued that an accounting was necessary to effectuate an accurate distribution of partnership assets. The partnership property was producing rental income that had to be accounted for, and plaintiffs Rukmani Koka and Ramachandra Pulumati had continued to pay the mortgage, insurance, and maintenance expenses for the property. Plaintiff Rukmani Koka asked the court to determine the validity of her offer to purchase the property, and to order an accounting.

Defendant opposed the motion, arguing among other things that the value of the property had increased dramatically since the settlement was entered, and that an offer to purchase it for $800,000 was inadequate. The exhibits appended to defendant's opposition make clear that plaintiff's offer was made on September 15 and defendant's offer was made on the 17th.

The trial court appointed an accountant to perform the accounting, and ordered the parties to "cooperate" with him. The court set a hearing on the motion to enforce the settlement agreement for July 26, 2012, so that defendant could challenge the court's decision by writ petition. On August 15, 2012, this court summarily denied defendant's writ petition.

The hearing on plaintiff Rukmani Koka's motion was held on September 14, 2012. At the hearing, the trial court set aside the prior dismissal and reinstated the action, accepted Rukmani Koka's offer to purchase the partnership's real property for $800,000, and ordered that a final accounting of the partnership be conducted after the property was sold. The court also formally appointed an accounting firm to prepare the accounting.

In October 2013, plaintiff Rukmani Koka moved for court approval of the accounting prepared by the court appointed accountant. The motion also advised the court that the parties had reached a new agreement to settle the claims between them.

The new agreement was entered on March 21, 2013, titled the "Memorandum of Agreement," and was between nonparties Realty Specialties, Inc., and Venkatesh Koka as the "sellers" of the Pioneer Boulevard property, and defendant as the "buyer."

4

Venkatesh Koka had acquired title to the property by way of quitclaim deed from plaintiff Lakshmana Koka and his wife, Vidhya Koka, which was recorded on January 9, 2013. Realty Specialties had acquired title by way of grant deed from plaintiffs Rukmani Koka and Ramachandra Pulumati, which was also recorded on January 9, 2013. The agreement further provided that "Sellers together own 60% of the property. Realty Specialties, Inc. is deemed the successor in interest of all Plaintiffs' claims set forth in [this case]."

The agreement specified that its purpose was to sell the property, and "to completely resolve all of the issues pending in litigation, and all of the issues on appeal" in this case. Defendant agreed to buy the Pioneer Boulevard property for $1,150,000. Escrow was to close on or before April 26, 2013. The agreement further recited that the parties "intend to resolve all accounting issues within (90) days of the signing of [the] Agreement, subject only to the court's calendar and the ability to schedule a hearing approving the accounting within that time."

The parties agreed they would provide all of their accounting information to the accountant by April 10, 2013, so the accounting could be completed by May 10, 2013. The parties would attempt to schedule a hearing to approve the settlement by June 28, 2013, and agreed that no late documents could be provided to the accountant, and that approval of the accounting would not be delayed because the parties had not gathered sufficient information. The parties agreed, however, that the court would have discretion to order further accounting, if necessary, and the parties reserved the right to challenge "any issues raised by the accounting." The agreement also provided that the "court's prior rulings on the accounting presented in original settlement of September 8, 2004 will stand, and [the court] will make any such further orders as may be necessary to complete and resolve any and all other accounting issues between the parties not already addressed in the previous settlement." The agreement recited that defendant had already been ordered to pay $64,120 to the partnership, and that defendant would pay 60 percent of this to the sellers. The parties also agreed that defendant would pay to the sellers $98,700 as previously ordered pursuant to their settlement and stipulated judgment. "These sums

5

are in addition to whatever other monies the court orders disbursed per the accounting . . . . These payments shall be made to Venkatesh Koka upon receipt of releases from Plaintiffs in the referenced case."

The agreement further provided that "Venkatesh Koka shall indemnify, defend and hold [defendant] harmless from all liability and claims of liability which may be brought by Rukmani Koka, Ramachandra Pulumati and/or Lakshmana Koka for damages relating to the partnership or the September 8, 2004 settlement."

Lastly, the agreement provided that the court would retain jurisdiction under Code of Civil Procedure section 664.6 to enforce the agreement, and that defendant would dismiss his pending appeal within 10 days of the close of escrow.

The agreement was signed by Venkatesh Koka in his individual capacity and on behalf of Realty Specialties, Inc., and by defendant.

Rukmani Koka's motion for court approval of the accounting also sought prejudgment interest on the $64,120 and $98,700 that defendant had been previously ordered to pay pursuant to the 2004 settlement agreement. Additionally, the motion sought interest on the $541,509.64 in income defendant received from the property between 2004 and 2013, as well as the mortgage payments made by the plaintiffs.

Venkatesh Koka's declaration in support of the motion provided that "I am the agent for Rukmani Koka and Ramachandra Pulumati." He averred that defendant had never provided an accounting of the rents he received from the partnership property, and never paid his share of the mortgage payment or property expenses. Venkatesh Koka averred that although his agreement with defendant contemplated that escrow would close on April 26, 2013, escrow did not close until August 27, 2013. Based on the accounting, defendant owed $390,235.19. Venkatesh Koka averred that he provided "all necessary documentation" for the accountant to prepare the accounting.

According to Venkatesh Koka, the close of escrow was delayed because defendant refused to pay the sum of $98,700 through the escrow, and refused to close escrow if he had to pay this sum. Therefore, the parties agreed to reserve the issue concerning the $98,700 for the court, so that escrow could be closed. Venkatesh Koka averred that the

6

$98,700 was the sum owed to plaintiffs under the original 2004 settlement to reimburse them for maintenance costs, and that it was not to be adjusted based on plaintiffs' and defendant's share in the partnership.

The court-appointed accountant, Nadadur Vardhan, also filed a declaration in support of the accounting. He created a summary of cash receipts and expenses incurred by Venkatesh Koka and for defendant for the period of June 1, 2004, through March 31, 2013. Venkatesh Koka had a net loss of $163,323.53. Defendant's 40 percent liability for this loss was $65,329.41. Defendant had net income of $541,509.64. Venkatesh Koka's 60 percent share of this income was $324,905.78. Defendant claimed expenses of $99,761.18, but failed to provide documentation to support the expenses, so the accountant did not include the expenses in his report. The accountant was also unable to verify all of the rental income paid to defendant, as defendant did not provide copies of checks for June, July, or August 2004, and failed to provide a copy of the lease.

The accountant prepared comprehensive spreadsheets documenting the partnership's income and expenses. The summaries concerning Venkatesh Koka's income and expenses relied on insurance contracts, tax statements, bank statements, invoices, and lease agreements. The summaries concerning defendant were based largely on cancelled checks; defendant did not provide invoices, tax bills, or other documents in support of his claimed expenses.

Defendant filed an opposition challenging the accounting and requesting an opportunity to examine the accountant under oath. Defendant urged that a further accounting for the period of March 2013 through August 27, 2013, should be provided. Defendant argued that the accounting was not a "final" accounting of the partnership because it did not cover the period through August 27, 2013, when escrow closed. It was also "full of serious errors." Defendant urged he was never contacted for additional documentation concerning his expenses.

On October 24, 2013, the court approved the accounting, and found that defendant owed Venkatesh Koka $390,235.19. Defendant was additionally ordered to pay $6,814.08 for rent for June, July, and August 2004; $38,472, representing Venkatesh

7

Koka's share of the $64,120 that defendant was previously ordered to pay the partnership; $98,700 to reimburse for partnership expenses owed to plaintiffs; and prejudgment interest of $244,868.63. The court declined to order any further accounting. The court signed plaintiff Rukmani Koka's proposed order that designated Venkatesh Koka and Realty Specialties as the payees under the judgment. Judgment was entered on December 3, 2013.

On December 4, 2013, defendant moved to vacate the court's October 24, 2013 order approving the accounting on the basis that the order exceeded the court's jurisdiction because the order was based on defendant's contract with nonparties, and directed defendant to pay money to nonparties. Defendant also urged that the order denied the parties a final accounting as it did not require an additional accounting for the period of March 2013 through August 2013. The trial court denied the motion on January 7, 2014. Defendant filed notices of appeal from the court's October 24, 2013 and January 7, 2014 orders.

Both parties have filed motions for judicial notice with this court. Both parties' motions concern other lawsuits among the parties concerning their real estate investments, including the investment in this property. We grant the motions for judicial notice.

Venkatesh Koka and Realty Specialties, Inc., sued defendant and his company, Ajah, LLC, alleging that defendant deeded the Pioneer property to Ajah, LLC in violation of the parties' Memorandum of Agreement, which provided that defendant would not encumber the property beyond the $700,000 deed of trust, to permit Venkatesh Koka and Realty Specialties to record a lien to secure any sums due under the accounting in this case. Defendant and Ajah, LLC cross-complained against Venkatesh Koka, Realty Specialties, and plaintiffs alleging that Venkatesh Koka and Realty Specialties failed to deliver releases from the plaintiffs, as contemplated by the Memorandum of Agreement. Plaintiff Lakshmana Koka also cross-complained against defendant, Venkatesh Koka, and Realty Specialties, for declaratory relief and money had and received, alleging that

8

Venkatesh Koka never transferred or assigned his rights to receive rental income from the property in this action.

Lakshmana Koka commenced another action against the other plaintiffs, Venkatesh Koka, and other entities. Defendant was not named as a party. That action was settled, Lakshmana Koka released all claims, and agreed that he would quitclaim his interest in the subject properties (including the property at issue on this litigation).

## DISCUSSION

### I.      Standing

Defendant contends plaintiffs lost standing to continue this action when they transferred their interests in the partnership property to Venkatesh Koka and Realty Specialties, and that they lacked standing to enforce the Memorandum of Agreement between Venkatesh Koka and Realty Specialties and defendant, as they were not parties to that agreement. Defendant also contends that the court lacked jurisdiction under Code of Civil Procedure section 664.6 to enforce the Memorandum of Agreement because neither Venkatesh Koka nor Realty Specialties were parties to the action. Plaintiff Rukmani Koka contends that plaintiffs retained standing under section 368.5.

We find that plaintiffs retained standing under Code of Civil Procedure section 368.5; and that plaintiff Rukmani Koka did not move under section 664.6 to enforce the Memorandum of Agreement, but rather moved for an approval of an accounting of the partnership assets and liabilities, of which the Memorandum was merely evidence of factors relevant to that accounting. We also conclude that Venkatesh Koka's and Realty Specialties' consent to plaintiffs' continued prosecution of the action on their behalf defeats defendant's standing argument.

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367; see *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 353, fn. 2.) " ' "Real party in interest" has been defined as "any person or entity whose interest will be directly affected by the proceeding . . . ." ' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1178.)

9

A real party in interest may transfer its right in a cause of action to a third party. (Civ. Code, § 954 [a cause of action "arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner"]; see also *Essex Ins. Co v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259 (*Essex*).) When this occurs, the assignee becomes the real party in interest, standing in the " 'shoes of his assignor [and] taking his rights and remedies . . . .' [Citation.]" (*Essex,* at p. 1264; *Great Western Bank v. Kong* (2001) 90 Cal.App.4th 28, 31-32.) Typically, once the assignment occurs and the assignee becomes the real party in interest, the assignor lacks standing to prosecute the claim. (*Searles Valley Minerals Operations Inc. v. Ralph M. Parson Service Co.* (2011) 191 Cal.App.4th 1394, 1402; *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096.)

However, Code of Civil Procedure section 368.5 permits a former real party in interest to continue to prosecute an action or proceeding that was pending at the time its interest was transferred to another. Specifically, it provides that "[a]n action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest. The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." (§ 368.5; see also *Arabia v. BAC Home Loans Servicing, L.P.* (2012) 208 Cal.App.4th 462, 472-473.)

At the time the partnership assets were transferred, this proceeding was pending. Pursuant to Code of Civil Procedure section 368.5, plaintiffs could continue prosecuting their claims notwithstanding the transfer of rights to Venkatesh Koka and Realty Specialties. Moreover, it was well within plaintiffs' rights to assign payment of the judgment to Venkatesh Koka and Realty Specialties. (See Civ. Code, § 954; *Fjaeran v. Board of Supervisors* (1989) 210 Cal.App.3d 434, 440.)

Here, Venkatesh Koka and Realty Specialties' consent to plaintiffs' continued prosecution of this action is evident from the record below. Venkatesh Koka submitted a declaration in support of plaintiff Rukmani Koka's motion to approve the accounting. Moreover, the Memorandum of Agreement, signed by Venkatesh Koka and Realty

10

Specialties, specified that its purpose was to sell the partnership asset at issue in plaintiffs' case, and "to completely resolve all of the issues pending in litigation, and all of the issues on appeal" in this case.

Defendant argues that a multiplicity of suits has resulted, referring to the matters of which we have taken judicial notice. Those lawsuits do not change our analysis because they do not involve the failure to pay according to the accounting ordered by the trial court in this case. Moreover, the Memorandum of Agreement entitles defendant to releases from plaintiffs before he is obligated to pay on the accounting. The other lawsuits present no possibility of inconsistent obligations. Moreover, at least one of the other lawsuits has been settled, and in any event, Venkatesh Koka agreed to indemnify defendant for any potential claims arising from this lawsuit.

Venkatesh Koka's and Realty Specialties' status as the real parties in interest provides no basis for reversal. (*Greco v. Oregon Mutual Fire Insurance Co.* (1961) 191 Cal.App.2d 674, 687.)

## II. Accounting

Alternatively, defendant contends the trial court abused its discretion by failing to order the accounting called for in the Memorandum of Agreement, and by denying defendant's request for a further accounting. Specifically, he contends that the trial court failed to consider the liquidation of the partnership's only asset – the Pioneer property – when it approved the accounting, and that the accounting approved by the court was insufficient to wind up the partnership because it did not consider the partners' capital accounts. We find no merit in any of defendant's contentions.

Pursuant to statute, each partner is entitled to an accounting of partnership accounts and business at the end of a partnership. (Corp. Code, §§ 16807, subd. (b), 16401.) An accounting is an equitable remedy to be decided by the court, and its findings are subject to the abuse of discretion standard of review. (See *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1392.)

The parties' 2004 settlement properly considered the partners' capital accounts, and going forward, the only issues remaining to be decided were the rental income and

11

any expenses associated with the operation of the partnership's property. Moreover, the court's order approving the accounting properly considered the sale price of the property when considering what sums were owed by defendant to settle the partnership accounts. Therefore, by the terms of the parties' settlement agreement, the court did not need to consider if any balance remaining in the partnership accounts should be credited to the parties. (See, e.g., *Tiffany v. Short* (1943) 22 Cal.2d 531, 533-534 [partnership assets should be divided according to the parties' agreement].)

## III. Prejudgment Interest

Defendant also contends that the judgment "*improperly included* interest explicitly disallowed by law . . . ."

Generally, Civil Code section 3287, subdivision (a), provides for the payment of prejudgment interest to every person entitled to receive damages that are certain or capable of being made certain by calculation if the right to receive such damages vested on a particular day. (See *Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1790.) "The test for recovery of prejudgment interest under section 3287, subdivision (a) is whether defendant (1) actually knows the amount of damages owed plaintiff, or (2) could have computed that amount from reasonably available information." (*KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 391.) On appeal, we independently determine whether damages are ascertainable for purposes of the statute. (*Id.* at p. 391, fn. 8; see also *Employers Mutual Casualty Company v. Philadelphia Indemnity Insurance Co.* (2008) 169 Cal.App.4th 340, 346.)

"[C]ourts have reasoned that 'where an accounting is required in order to arrive at a sum justly due, interest is not allowed.' . . . [¶] Disallowing prejudgment interest in an accounting action is consistent with the principle . . . that no prejudgment interest is 'allowable when damages cannot be computed except on conflicting evidence . . . .' " (*Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 908, citations omitted.) "Although an accounting action is prima facie evidence a claim is uncertain, [courts have] not foreclose[d] the possibility of prejudgment interest in an accounting action where equity demands such an award." (*Id.* at p. 909.) Therefore,

12

"[a] partner may collect interest where partnership funds have been wrongfully withheld . . . ." (*Luchs v. Ormsby* (1959) 171 Cal.App.2d 377, 388; see also *Speka v. Speka* (1954) 124 Cal.App.2d 181, 186-187.) Whether equity requires an award of prejudgment interest "present[s] a question calling for judicial discretion in determining what equity require[s]." (*Stockton Theatres, Inc. v. Palermo* (1953) 121 Cal.App.2d 616, 632.)

Defendant contends the court erred in awarding prejudgment interest because the amount of damages was uncertain before the completion of the accounting in 2013. We disagree. As of the 2004 settlement, it was already determined that defendant owed the partnership $64,000, and that he owed $98,700 to his other partners. It was also determined going forward that the partners would share in the income and expenses of the property on a 60-40 basis. The rental income defendant derived from the property was readily ascertainable by reviewing the cancelled checks he provided to the accountant. Moreover, the expenses associated with the property were readily ascertainable going forward from the 2004 settlement, as the parties had completed an accounting in advance of that settlement. Plaintiffs only sought interest on the sums due from the partnership going forward from 2004, as the damages accrued. Moreover, the evidence ultimately provided to the accountant showed that plaintiffs bore the costs associated with maintaining the partnership property, had no positive cash flow, yet the defendant derived *substantial* amounts of income without the burden of partnership expenses. The trial court implicitly found that the award of prejudgment interest was equitably necessary. On this record, the court did not err in awarding prejudgment interest.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

GRIMES, J.

We concur:

BIGELOW, P. J.                    RUBIN, J.

13