JOSEPH GABRIELLE *vs.* J. ARTHUR MARINI.

JULY 10, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.   This is a bill for an accounting and auxiliary relief as a result of the dissolution of an alleged partnership by the actions of one of the partners.   The cause was heard in the superior court on bill, answer and oral proof and thereafter a decree granting the relief prayed for was duly entered.   From that decree respondent has appealed to this court.

The decree expressly finds that complainant and respondent were equal partners in the "Mid-Town Luncheonette," later called the "Mid-Town Restaurant," from and after December 1948; that such partnership existed until August 29, 1950 when it was dissolved in fact by the actions of respondent; that thereafter he operated the restaurant on his own account; and that upon the payment of costs of administration, to be allowed by the court, and of all partnership debts the partners were entitled to an equal division of the remaining assets.

The decree also finds that all funds, including those drawn from the partnership account prior to August 29, 1950, all cash receipts and proceeds of a loan of $17,000 from Washington Trust Company of Westerly, Rhode Island, which were spent in altering, repairing and improving the premises where the restaurant was conducted, constitute a lien on the interest of respondent in such real estate subject to due allowance for diminution in value thereof by reason of ordinary wear and tear to August 29, 1950.

In addition to the above findings the decree provided for the appointment of permanent receivers to take charge of the partnership property, to manage and operate the restaurant, and for the appointment of a master to cast a true and

just account between the parties and to determine the exact amount of the lien. The decree also expressly restrained and enjoined respondent from conveying his interest in the real estate and from mortgaging or otherwise encumbering it.

In support of his claim of appeal from such decree respondent has filed seventeen reasons of appeal. Many of these, however, have been neither briefed nor argued and are therefore not entitled to consideration. The rest are repetitious and may be summarized as contentions that the decree as a whole and certain specific findings therein are against the law and the evidence and the weight thereof. Even those reasons have not been briefed and argued separately but have been divided into three groups and briefed under three specific points as follows: 1. The complainant did not sustain the burden of proving that a partnership existed between him and respondent. 2. The finding in the second paragraph of the decree "That said partnership continued to exist until August 29, 1950, and was then and there dissolved in fact by the actions of the respondent" is erroneous and contrary to the weight of the evidence. 3. The complainant was guilty of unclean hands and therefore was not entitled to relief. We shall follow that treatment of the reasons of appeal upon which respondent relies and consider those points in the above order.

The proof of the existence of a partnership rests upon the following evidence which is substantially undisputed, as respondent did not testify nor did he present any witness who testified to the contrary. Sometime in 1947 Edward Lallo, Fred Gabrielle, father of complainant, and respondent purchased the Liberty Luncheonette, located at 18 Broad street in the town of Westerly, for $6,000. Each paid $2,000 toward the purchase price and $300 for a fund to be used in conducting the business. They hired complainant Joseph Gabrielle to manage the restaurant at a weekly salary of $50 and renamed it Mid-Town Luncheonette. After all expenses were paid it was agreed that the profits of the

business were to be deposited in the bank and "split three ways." The respondent and his wife were the owners of the real estate in which the restaurant was conducted and they rented the premises to the partnership for $175 a month.

After the business had been conducted for about six months Lallo sold his share and withdrew. This was done at the suggestion of respondent, and thereafter he and Gabrielle agreed that complainant was to draw a weekly salary of $75 and that after all expenses were paid the profits of the business would be divided "fifty-fifty." This arrangement continued for about three months when respondent suggested to Fred Gabrielle that he turn his share of the business over to complainant. Sometime in December 1948 Gabrielle complied with that suggestion and thereafter complainant and respondent carried on the business until August 1950.

The complainant testified that he bought his father's share for $3,450 after respondent had said to him: "I will be partners with you." He also testified that respondent had agreed with him "* * * on being partners together and we would share in the profits fifty-fifty." He further testified that he was to continue to manage and operate the restaurant at the same salary he had been receiving. On cross-examination he denied that he was the sole owner of the restaurant and reiterated that respondent and he were partners on the same basis of equality as respondent and his father were before the latter sold his share.

However, complainant admitted that he had registered the business in the office of the town clerk in his name alone; that the bank account of the business was in his name; that he reported the business in his federal income tax return as belonging to him; and that he executed a chattel mortgage of the property as mortgagor to respondent and his wife as mortgagees. But he explained that he acted in each instance at the direction of respondent who

told him that he wanted everything in "my name" because he did not want anyone to think that he had any connection with the business, and also that because of the income tax "he wanted to be dropped out of the picture."

The evidence discloses that respondent nevertheless actually took an active interest in the business and was around the restaurant almost every day and sometimes several times a day. During this period at the suggestion of respondent the premises were extensively remodeled at a cost of $26,000. Of that amount $9,000 came from the cash funds of the partnership and $17,000 from the Washington Trust Company on a promissory note signed by complainant and respondent and his wife as comakers.

Sometime thereafter in the summer of 1950 complainant went to Louisiana to adjust some personal domestic trouble. He testified that respondent had urged him to go. He was absent for about three weeks, but before he left he signed a number of checks in blank which were to be used for paying the expenses of running the restaurant during his absence. The respondent used one of those checks to close out the account in the name of complainant doing business as Mid-Town Luncheonette and thereupon opened a new account in the name of his brother Carl Marini—Mid-Town Restaurant Special.

The respondent's attorney argues that the business was taken over under the chattel mortgage to protect respondent's and his wife's interest in large sums of overdue rent and also to secure them against liability on the $17,000 note to the bank. However, there is no evidence in the record upon which such an argument could be reasonably based. The respondent's failure to testify in the face of positive, explicit statements of complainant under oath that respondent and he had agreed to conduct the business as partners and that the acts which he, complainant, had done solely in his own name, including his execution of the chattel mortgage, were done at the direction of respondent leaves him

with little if any standing to claim that he was merely a creditor of the business and not a partner also.

After a careful perusal of the transcript we cannot say that the trial justice was clearly wrong in finding that a partnership existed between the parties. Indeed the evidence of that fact due to the failure of respondent to testify appears to be undisputed. Counsel's argument that such evidence is insufficient in law to establish a partnership is without merit. The facts in evidence here are quite dissimilar to those in *Boston & Colorado Smelting Co.* v. *Smith,* 13 R. I. 27, upon which he relies. In the instant case the evidence is uncontradicted that funds contributed by both parties were employed in the common enterprise with the express understanding that the profits thereof were to be shared equally. While nothing was said about losses in excess of the capital invested there can be no question that they too would have to be shared. In any event if respondent had a contrary conception of his status in the joint undertaking in which he so actively engaged it was clearly incumbent upon him to testify and make his position plain. That he did not do so and gave no explanation for his failure to testify reasonably leads to the assumption that he could not successfully contradict complainant's testimony. The respondent's first point is therefore without merit.

His second point needs no extended treatment. In our view it is also lacking in merit, as there is only one reasonable conclusion to be drawn from the evidence, namely, that respondent unilaterally assumed undivided direction and control of the business and excluded complainant therefrom when respondent transferred the bank account to his brother Carl Marini as Mid-Town Restaurant Special, and later on August 29, 1950 resorted to force, through the police of Westerly, to keep complainant out of the restaurant. Here again the failure of respondent to testify in justification or explanation of such conduct furnishes the

basis for an inference that he could not successfully contradict complainant's claim that the partnership had theretofore existed between him and respondent and that the latter had by his own individual actions dissolved it on that date.

The respondent contends under his third point that complainant does not come into court with clean hands and hence should be denied relief. He bases that contention on the following facts. The complainant has removed and taken with him out of this state and the jurisdiction of its courts an automobile which he purchased with proceeds of a note to the bank on which respondent is a comaker; that he has registered it in the name of his mother to place it beyond reach of attachment by respondent; that he was not truthful when he registered the restaurant business, filed income tax reports, opened a bank account, and conducted other operations of the restaurant solely in his own name.

The respondent cites authorities in support of his contention, but in our opinion they are not in point on the facts in the case at bar and therefore we need not discuss them. The facts above relied on do not constitute grounds for the application of the doctrine of unclean hands. Those acts of the complainant were not in fraud of any interest or right of respondent involved in the instant suit. To entitle respondent to the benefit of that doctrine he must show that such acts were related to the particular matters concerning which complainant is here seeking relief, and that they were in fraud of respondent's rights and interest in such subject matter. *Cirillo* v. *Cirillo*, 77 R. I. 223; *Vercesi* v. *Petri*, 334 Pa. 385; *Orsi* v. *Orsi*, 125 Conn. 66.

Under point 2 respondent also has a reason of appeal which challenges the decree in imposing a lien on the real estate where the restaurant is situated. Although he has not specifically briefed such question he did argue it to some extent orally and therefore we shall consider it. The evidence is clear that $9,000 of the partnership funds and the loan of $17,000 from the bank were used to improve such

real estate.  Where partnership funds and credit are thus employed to improve real estate used in the partnership, the liquidating partner who owns the real estate is liable to the other partner for his share of the net enhanced value of such improvements after lawful and proper deductions are made.  *Flint* v. *Flint,* 87 N. J. Eq. 560; *Lane* v. *Tyler,* 49 Me. 252; *Minikin* v. *Hendrix,* 15 Cal.2d 338.

Here the real estate in question is owned by respondent and his wife.  Since she is not a party to the instant suit the decree quite properly restricts the lien imposed on such real estate to the respondent's interest therein.  Consequently on casting the accounts between the parties the master is appropriately directed by the decree to charge respondent's interest in the real estate with the net enhancement in value thereof accruing from the expenditure of $26,000 out of partnership funds and the pledging of partnership credit on the renovation and improvement of such real estate. There is therefore no merit in respondent's contention that a lien was illegally or unfairly impressed thereon.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*M. Walter Flynn, George Ajootian,* for complainant.
*Cappuccio & Cappuccio, Frank S. Cappuccio,* for respondent.