**Claude GAULDIN, Plaintiff-Appellant,**

v.

**Joe CORN, Defendant-Respondent.**

**No. 11105.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 1, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 25, 1980.

Application to Transfer Denied
April 8, 1980.

Kenneth A. Wagoner, Richard D. Moore, Moore & Brill, West Plains, for plaintiff-appellant.

Don M. Henry, Harold L. Henry, Henry, Henry & Henry, West Plains, for defendant-respondent.

GREENE, Judge.

On July 18, 1977, plaintiff filed a petition in the Howell County Circuit Court for dissolution and accounting of a partnership entered into between plaintiff and defendant. Defendant answered, claiming that the parties had already dissolved the partnership and divided the assets. Trial by court followed.

After trial, the trial court filed its findings of fact and conclusions of law and entered judgment in favor of defendant and against plaintiff. Plaintiff filed his First Amended Motion to Amend the Judgment and Opinion asking the trial court to make a specific finding on whether there was an agreement for distribution of the fixed assets. The trial court sustained the motion and found that the parties had no agreement regarding the disposition of fixed assets upon dissolution. This appeal followed.

The following evidence was presented to the trial court. Defendant Joe Corn, testified that in October, 1966, he entered into a 50–50 partnership with plaintiff Claude Gauldin for the purpose of raising cattle and hogs. Defendant and plaintiff contributed equally to getting the business started. The partnership business was carried out on approximately 25 acres of an 83 acre tract of land owned, at the beginning of the partnership, by defendant's parents and later acquired by defendant and his wife.

The bulk of the partnership profits were put back into the business. Some of the profits were used to improve the 25 acres on which the cattle and hogs were raised. Partnership money was used to fence in 10–15 acres and to repair already existing fence. Top dressing and seed, costing $2,000.00, was placed on some of the land. A machine shed, or barn, was built on the land while it was still owned by defendant's father. Defendant testified that the barn cost either $2,487.50 or $2,400.00. He said that a Cargill unit was built on the property

in 1975 at a cost of either $8,000.00 or $7,995.00.

At time of trial, both the barn and the Cargill unit were still on the property. Neither could be removed from the land. Defendant testified that neither building could be used for anything other than the raising of cattle and hogs, that he was no longer in the business because of his health, and that the buildings were therefore useless to him and had no value. Defendant admitted, however, that the land was put into better shape by the labors of the partners and that the value of the land was increased thereby.

The partnership never paid any rent on this property either before or after defendant owned it. Nor did plaintiff pay any rent after the partnership was dissolved. However, no rent was ever requested. Defendant testified that there was an understanding between plaintiff, defendant, and defendant's father, at the beginning of the partnership, that any improvements or structures placed on the land during the course of the partnership would become part of the real estate. This was because the partnership had no money to pay rent at that time.

In 1975, defendant's health began deteriorating and his doctor advised him to get out of the hog business. In January, 1976, he told plaintiff that he could not go on and that he had lined up a party who would purchase his interest in the partnership. Plaintiff said that he wasn't interested and made defendant a give or take proposition of $7,500.00. The proposition was coupled with a proviso that plaintiff be allowed to remain on the land and carry out his business for 5 years. Defendant rejected this offer. Nothing was mentioned at that time about removable assets.

Plaintiff continued operating the business on defendant's land and stayed until May, 1977. In March, 1977, defendant accepted plaintiff's offer of $7,500.00 and plaintiff paid off a $1,500.00 note, owed by the partnership, in exchange for the right to remain on the land through May. The receipt for the $7,500.00, which defendant signed in March, 1977, indicated that it was payment for removable assets only.

Plaintiff's testimony concerning the formation of the partnership, paralleled that of the defendant. There was no formal partnership agreement and plaintiff denied that there was any conversation between plaintiff, defendant, and defendant's father, prior to starting the business, concerning partnership improvements becoming part of the real estate in lieu of rent. He testified that the barn, which was built in 1970 at a cost of $2,500.00, had a value of $4,000.00 at time of trial and that the Cargill unit, built in 1975 for $8,000.00, was worth $10,000.00 at time of trial. The parties did not have an agreement, at the time that these units were built, as to how their value would be divided if the partnership was dissolved. One small pond was dug at a cost of $150.00, and a larger pond was included in the cost of the Cargill unit. Seeding and fertilizing was done on the land where the cattle would be grazed. No cash rent was paid for the use of the land, nor was any partnership money expended for taxes or upkeep. Plaintiff admitted on cross-examination that "anytime something was put on the land, it was part of the real estate."

In January, 1976, defendant informed plaintiff that he wanted to quit the business. Plaintiff testified that defendant did not inform him that he (defendant) had someone lined up to purchase defendant's half of the partnership. Plaintiff made a list of all removable assets, based on the price originally paid for them, which indicated they were worth $15,000.00. He offered defendant $7,500.00 for defendant's share of the removable assets. Defendant did not make a counter-offer. Plaintiff continued to operate the business alone and paid partnership debts that year.

In the fall of 1976, defendant told plaintiff that he would get some disinterested party to get together with plaintiff and try to work something out. Plaintiff met with defendant's brother-in-law, who took plaintiff's $7,500.00 offer to defendant. Defendant rejected it. In March, 1977, defendant called plaintiff and said that he wanted the

$7,500.00 or he would sell plaintiff's stock, and anything else that could be removed from the land, within a week. Defendant would not negotiate further. Plaintiff paid the $7,500.00 only after the threat to sell. He did not pay any interest on the $7,500.00, nor had he paid any rent for using the land after January, 1976 (none was requested). Plaintiff got the removable assets for the $7,500.00. Defendant never paid him anything for the fixed improvements.

On cross-examination, plaintiff testified that his give or take offer was for removable assets only. Defendant's counsel then read the following from plaintiff's deposition: "Q. When did the word removable assets first come into the conversation or the picture here between you and Mr. Corn? A. At the time I paid him I guess." At the close of plaintiff's testimony, defendant's counsel read more excerpts from plaintiff's deposition as admissions against interest. These indicated that plaintiff knew, at the time that the buildings were being constructed, that they were being permanently attached to the real estate and would become a part of it. Nothing concerning the partnership was in writing. Plaintiff knew that, if the land was sold to somebody else or if they quit the business, he would lose it all.

Robert Hinds, who at the time of trial was in business with plaintiff, estimated that the fair value of the Cargill unit was $8,000.00 and that the fair value of the barn was $3,500.00. Defendant's land was worth $200.00 an acre in 1966, when the partnership began. Natural appreciation had increased the value of the land $550.00 an acre to $750.00 an acre. With the improvements, absent the feeding barn, the value of the land, at the time of trial, was $1,000.00 an acre. Dee Franklin, an accountant and tax consultant, testified concerning the preparation of the partnership's income tax returns for the years 1968–1975.

Upon completion of all of the testimony, the case was taken under advisement by the court. On June 13, 1978, the trial court issued its findings of fact and conclusions of law. The court found that the parties had entered into an oral partnership agreement to share costs, labor, losses, and profits equally; that the business was started on land owned by defendant's parents and acquired by defendant and his wife in February, 1971; that no rent was paid for the use of the land and no agreement existed to consider the use of the land as a contribution by defendant; that the machine shed/barn was built in 1970 at a cost of $2,487.50; that the Cargill unit was built in 1975 at a cost of $8,000.00; that $1167.83 was paid out of partnership funds to seed and fertilize the land between 1969–1975; that fences were improved and new ones built with partnership money; that partnership funds were used to clear or bulldoze the land; that all improvements to the land were made for and used by the partnership; that the partnership was dissolved in January, 1976; that in March, 1977, plaintiff paid defendant $7,500.00 and took a receipt for all "removable assets"; and that plaintiff and defendant had no agreement regarding the distribution of fixed assets upon dissolution of the partnership. The court found for defendant and against plaintiff, who took nothing. This decision was based on reasoning that defendant did not own the land during the period of the partnership, since it was owned either by defendant's parents or by defendant and his wife as an estate by the entirety, and defendant's wife was not made a party to the suit, and by the fact that plaintiff knew that the improvements could not be removed at the time they were constructed.

On appeal, plaintiff's sole point is that the trial court erred, as a matter of law, in awarding judgment against plaintiff in the light of its findings of fact. He contends that since the trial court found that fixed partnership assets were erected on land owned by the defendant after formation of the partnership, which assets were acquired with partnership funds and were used by the partnership, and that there was no agreement regarding the disposition of the fixed assets upon dissolution of the partnership, he was entitled to a judgment, as a matter of law, in the sum of $5,750.00,

which he contends is one-half the value of the Cargill unit ($8,000.00) and the barn ($3,500.00).

■ The decree or judgment of a trial court will be sustained by an appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Plaintiff here complains that the trial court erroneously applied the law, and we restrict our review to that question.

There appear to be no Missouri cases which directly address the question of how to treat improvements made, with partnership funds for partnership purposes, on land owned by one of the partners. However, there is one Missouri case which, in dicta, refers to "the well-established rule that improvements made upon lands owned by one partner, if made with partnership funds for purposes of partnership business, are usually treated as personal property," and pronounces it "sound substantive law." *In re Condemnation of Land for Spring Valley Park*, 57 S.W.2d 752, 754 (Mo.App.1933). We look, therefore, to the law of other jurisdictions for guidance.

In *Grissom v. Moore*, 106 Ind. 296, 6 N.E. 629 (1886), a partnership was formed to engage in the milling business. One partner, Martz, agreed to contribute milling machinery if the other, Grissom, would construct a mill on land owned by him and convey an undivided one-half interest in the lots and building to Martz. Upon Grissom's death, cross-suits were brought to quiet title in the undivided one-half interest. There was no record of any rent paid by the partnership for the use of the lots and building, nor was there any agreement as to how the improvements were to be divided upon dissolution of the partnership. After ruling that the wife's inchoate dower rights, in property seized by her husband during marriage (the lots), could not be defeated by any agreement short of a conveyance in which she was joined, the court observed, "The question still remains, did she take any interest in the improvements?" 6 N.E. at 630. The court cited the general rule that "Improvements made even on lands owned by one partner, if made with partnership funds, or for the purpose of the partnership, are to be treated as the personal property of the firm," 6 N.E. at 631, and then went on to note:

"As we have already seen, the inchoate right of the wife in the lots was not subject to be defeated by the agreement with Martz. Her interest attached by virtue of the seizin of her husband, and he was seized before the agreement was made. *It was not so with respect to the improvements.* These became partnership property before any rights of the wife attached. Since they were the contributions of the partners to the capital of the firm, they became partnership assets *the same as if they had been acquired with the funds of the partnership*, and are to be treated as personal property belonging to the firm." Id. (emphasis added)

In *Flint v. Flint*, 87 N.J.Eq. 560, 100 A. 754 (1917), a partnership was formed for the retail selling of butter, eggs, poultry, and dairy products. An office and storage building, stable, and wagon shed were erected on land owned by one of the partners for $9,000.00. The buildings were constructed with partnership funds and were used for partnership purposes. There was no agreement as to how the improvements would be divided upon dissolution. After the death of one of the partners, the surviving partner, who owned the land, paid $14,000.00 to the widow of the deceased partner for the estate's interest in the assets of the partnership, including the value of the improvements. The deceased partner's heirs at law maintained that the improvements were real estate and that an interest therein descended to them upon the partner's death.

The court noted that the owner of the real estate had conceded that "the fact that the land was the land of one of the partners and the improvements were made with partnership funds operates to prevent the

owner of the soil from asserting, as against the partnership and its representatives, the right to hold the improvements without some compensation." 100 A. at 755. It then proceeded to discuss the disposition of the improvements.

"The question is, What is the right of the partnership? Is it a right in the property or a right against the property? Is it a right of ownership in the property, or is it in the nature of a lien against the property for the value put into it? I think the latter. What the partnership used was money, personal property. This money was used to purchase personal property. That personal property was put upon real estate, and although its physical nature was not in any wise altered, it became, by virtue of a rule of convenience, real estate, but not I think the real estate of the partnership. By virtue of the relations existing between the parties a duty arose upon the part of the owner of this soil in this case to account to the partnership. The right of the partnership was a right to recover from the owner of the soil, not real estate but personal property, to wit, money. (citation omitted). Such a right is a chose in action which is personal property. . . . The duty of the owner of the soil is to pay money, not to give real estate or an interest therein." 100 A. at 755–756.

In *Marston v. Marston*, 277 Mass. 129, 177 N.E. 862 (1931), a father and his two sons entered into an oral agreement, forming a partnership at will, for carrying on a greenhouse business. Under the terms of the agreement, the father would allow the use of his farm for the partnership business, and the partnership would pay the taxes thereon, a specified sum each year on the principal of a mortgage to which the farm was subject, and the interest on the mortgage. Several years earlier, the father had told the sons that they could erect greenhouses on the farm but that such greenhouses would become the father's property. The appellate court ruled that the earlier agreement between the father and his sons was superseded by the partnership agreement and that any greenhouses constructed after the formation of the partnership were not covered by it. The court then noted that, "Where partners are to give their whole time to the business and share equally all profits and losses, structures erected by the partners for the partnership business with partnership funds upon the land of one of the partners are partnership property *in the absence of any agreement as to the title of those structures or of facts showing a different intention.*" 177 N.E. at 862–863 (emphasis added). The court also noted that, "If the buildings in question were held not to be partnership property, the father would receive a larger share of the profits of the partnership than either of his partners." 177 N.E. at 863.

In *Minikin v. Hendrix*, 15 Cal.2d 338, 101 P.2d 473 (1940), a partnership was formed to engage in the woodworking business. The defendant partner owned real estate upon which certain improvements were constructed. After citing, with approval, *Flint* and *Marston*, the court stated:

"In the instant case it was conceded by the partners that the improvements were purchased with partnership funds and placed on the real property owned by one of the partners; that the latter was compensated by the partnership for the use of the real property; and *that no contract was entered into by the partners respecting the disposition to be made of the improvements in the event of dissolution.* Under those circumstances the improvements became a partnership asset and, as such, on dissolution of the partnership the nonland owning partner was entitled to his proportionate share of their value." 101 P.2d at 476 (emphasis added).

Thus, the California court, following *Marston*, focused its attention on whether the parties had an agreement to cover the disposition of improvements upon dissolution of the partnership. See also *Speka v. Speka*, 124 Cal.App.2d 181, 268 P.2d 129 (1954), where the court, after citing the rule set out above, ruled that a lease agreement, entered into by the parties, governed the disposition of improvements made on land owned by one of the partners.

In *Wiese v. Wiese*, 107 So.2d 208 (Fla. App.1958), plaintiff and defendant entered into an oral partnership agreement whereby defendant was going to furnish certain land, and the partners were going to build a boat basin thereon. After agreeing with the reasoning set out in *Minikin* and *Flint*, the court awarded the non-landowning partner one-half the value of the improvements made to defendant's land. In *Gabrielle v. Marini*, 80 R.I. 458, 98 A.2d 363 (1963), plaintiff and defendant were partners in a restaurant which was located on land owned by defendant and his wife and which the partnership rented for $175.00 a month. The court, citing *Minikin* and *Flint*, held that "[w]here partnership funds and credit are employed to improve real estate used in the partnership, the liquidating partner who owns the real estate is liable to the other partner for his share of the net enhanced value of such improvements after lawful and proper deductions are made." 98 A.2d at 366. The court then gave plaintiff a lien against the real estate but, since the land was owned by both the defendant and his wife, and she had not been joined in the suit, restricted the lien to defendant's interest in the real estate.

*Knauss v. Hale*, 64 Idaho 218, 131 P.2d 292 (1942) is the only case which departs from the general rule enunciated above. In that case plaintiff and defendant entered into a written partnership agreement to raise and sell sheep. Plaintiff contributed, without charge to the partnership, a 640 acre homestead. The partnership then expended partnership money to construct a reservoir, cistern, and other improvements for the use of the partnership. The court there reasoned that defendant knew, when the improvements were made, that they could not be moved upon the termination of the partnership and that, if he expected to receive some compensation for them, he would have insisted upon an agreement governing their disposition upon dissolution. The court then analogized the situation to that where a tenant, in the absence of an agreement, voluntarily places improvements upon a leasehold (an analysis specifically rejected in *Grissom, Flint,* and the cases following them).

■ We agree with the court in *In re Condemnation of Land for Spring Valley Park*, supra, that the rule is "well-established" that improvements made upon lands owned by one partner, if made with partnership funds for purposes of partnership business, are the personal property of the partnership, and the non-landowning partner is entitled to his proportionate share of their value. In so doing, we reject, as inappropriate, the reasoning set out in *Knauss. Grissom, Flint,* and the cases following them, reflect a more fair and equitable rule which is consistent with the language contained in Missouri's Uniform Partnership Law, § 358.010 et seq., RSMo 1978. Section 358.080, RSMo 1978, states, in part:

"1. *All property* originally brought into the partnership stock or *subsequently acquired by purchase or otherwise, on account of the partnership is partnership property.*

2. *Unless the contrary intention appears*, property acquired with partnership funds is partnership property." (emphasis added)

■ It is clear from the cases, which we have cited, that the general rule, governing the disposition of improvements upon dissolution of a partnership, is activated only where, as here, there is no agreement between the partners which controls such disposition. It matters not that the landowning partner contributed the use of his land to the partnership, that the non-landowning partner knew that the improvements, when made, could not be removed from the land, or that a joint owner with the landowning partner was not joined in the suit for dissolution and accounting of the partnership. Thus the trial court, after finding that the partners had no agreement regarding the disposition of fixed assets upon dissolution of the partnership, should have applied the rule, that we have approved here, and should have awarded plaintiff his proportionate share of the value of the improvements at the time of dissolution of the partnership.

We therefore reverse the judgment of the trial court awarding plaintiff nothing, and remand with directions to the trial court to determine, from the record, the value of the Cargill unit and the barn at the time of dissolution of the partnership, that the trial court reopen the record for the purpose of hearing testimony on that issue only, and to thereafter enter a judgment awarding plaintiff his proportionate share (one-half) of their value.

All concur, except HOGAN, J., recused.